IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| F.V., a minor suing by and through his natural Mother and next friend AMBER VARGAS, and AMBER VARGAS, individually, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-142-WKW [WO] |
| RANDOLPH COUNTY BOARD OF EDUCATION; JEREMIAH MARQUIS THOMAS; JIMMIE FRYER; B.P., a minor, by and through his father and next friend, CHRIS ALLEN PETTIT; and D.S., a minor, by and through his father and next friend, DARRELL SIMS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

A third-grade student, F.V., was attacked on the playground at school by two of his classmates. His mother has sued the principal, the teacher, and the school board under federal and state law for failing to protect her son from the recurrent bullying by these fellow students. Before the court are the motions to dismiss filed by (1) the Randolph County Board of Education (Doc. # 68) and (2) the principal and teacher (Jimmie Fryer and Jeremiah Marquis Thomas) (Doc. # 67). The motions are fully briefed. (Docs. # 72–73, 77–78.) The board of education's motion is due

to be granted in part and denied in part, and the school officials' motion is due to be granted.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction over the federal law claims is proper under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights jurisdiction), 1441 and 1446(b)(3) (removal jurisdiction).  Subject matter jurisdiction over the supplemental state law claims is lacking based on state sovereign immunity.  Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW

### A.   <u>Rule 12(b)(6)</u>

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor." *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (alteration adopted).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citation omitted). The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id.*

**B.   Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the complaint "sufficiently allege[s] a basis of subject-matter jurisdiction," employing standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

## III.  BACKGROUND

**A.   The Parties**

Plaintiff F.V., who is of Hispanic heritage, and his classmates Defendants B.P. and D.S., attended Wedowee Elementary School during the academic years 2017–18 and 2018–19. Plaintiff Amber Vargas is F.V.'s mother. Defendant Jeremiah Marquis Thomas was the physical education teacher, who worked under the supervision of the principal, Defendant Jimmie Fryer. Defendant Randolph County Board of Education (RCBOE) manages and controls the Randolph County School System, which includes Wedowee Elementary School. (Docs. # 65, ¶¶ 1–7 (3d Am. Compl.).)

**B.**    **The August 30, 2018 Playground Incident**

On August 30, 2018, third-grade boys, F.V., B.P., and D.S., were on the playground during their physical education class.  Defendant B.P. wanted Plaintiff F.V.'s Beyblade toy.   When Plaintiff F.V. refused to give B.P. the toy, B.P. "slammed F.V. into a piece of metal, causing Plaintiff F.V. to fall to the ground and pass out."  (Doc. # 65, ¶ 11.)  Defendants B.P. and D.S. "proceeded to stomp on Plaintiff F.V. while he was on the ground."  (Doc. # 65, ¶ 11.)

The physical education teacher, Mr. Thomas, was at the playground, but he "was on his phone and was not paying attention to the students" at the time of the attack.  (Doc. # 65, ¶ 65.)  After the attack, Plaintiff F.V. was "sent . . . to the school nurse."  (Doc. # 65, ¶ 16.)  No school official notified Plaintiff F.V.'s mother that day that her son had been beaten up and lost consciousness.  (Doc. # 65, ¶¶ 16, 60.)

When Ms. Vargas picked up her son from school that day, he was bruised and scratched.  He also was "confused enough that he was unable to say what day of the week it was or remember what day of the week it was seconds after being told." (Doc. # 65, ¶ 16.)  Ms. Vargas reported the incident to Principal Fryer.  He suspended B.P. and D.S. for two days, but the suspension did not stop the bullying.  (Doc. # 65, ¶ 17.)

**C.   <u>The September 5, 2018 Incident</u>**

On September 5, 2018, Plaintiff F.V. returned to school.  He was confronted by Defendants B.P. and D.S., who were not being supervised.  Either B.P. or D.S. "threatened to kill" F.V., stating "that if he couldn't do it with his hands, he would use a knife."  (Doc. # 65, ¶ 12.)  After this threat, F.V. was unable to return to school "for some time, both because his doctors advised against it and because he and [his mother] were afraid for his life."  (Doc. # 65, ¶ 15.)

**D.   <u>Prior Incidents of Bullying</u>**

From late 2017 until the attack on August 30, 2018, Defendants B.P. and/or D.S. "bullied" Plaintiff F.V. at school and on the school bus.  (Doc. # 65, ¶¶ 14, 39, 46.)  "[O]ne basis of the harassment was that F.V. is Hispanic."  (Doc. # 65, ¶ 46.)

Principal Fryer, Mr. Thomas, and the RCBOE "had actual and/or constructive knowledge of B.P.'s and/or D.S.'s continuing practice of bullying F.V."  (Doc. # 46, at ¶ 14.)

**E.   <u>Plaintiff F.V.'s Injuries</u>**

As a result of the attack on August 30, 2018, Plaintiff F.V. suffered a concussion, internal bruising, and abrasions.  He also has endured suicidal thoughts and post-traumatic stress disorder.  (Doc. # 65, ¶ 13.)

**F.**   **The Claims**

Defendants are named in five of the eight counts in the governing Third Amended Complaint.  Plaintiffs bring two federal law claims against Defendants, alleging a hostile educational environment under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et seq.*, and a violation of substantive due process under the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

Plaintiffs also bring two Alabama tort claims against Defendants: negligence and wantonness *per se* (Count IV) and a breach of a duty to supervise (Count VII).  Ms. Vargas also asserts a derivative claim under Alabama law against Defendants for the loss of services of her child (Count VIII).  Plaintiffs seek compensatory and punitive damages.

## IV.  DISCUSSION

**A.**   **The Randolph County Board of Education's Motion to Dismiss**

The RCBOE urges dismissal of each count against it.  The arguments are addressed in turn.

### 1.   *State Law Claims (Counts IV, VII, and VIII):  Article I, Section 14 Immunity Under the Alabama Constitution*

The RCBOE argues that it has immunity under Article I, Section 14 of the Alabama Constitution on the state law claims in Counts IV, VII, and VIII.

"[T]he State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const., Art. I, § 14.  "Section 14 immunity is more than a defense; when applicable, it divests the trial courts of this State of subject-matter jurisdiction."  *Alabama State Univ. v. Danley*, 212 So. 3d 112, 127 (Ala. 2016).

Under Alabama law, "[c]ounty boards of education are State agencies for purposes of State immunity."  *Ex parte Wilcox Cnty. Bd. of Educ.*, 285 So. 3d 765, 775 (Ala. 2019).  "Because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit . . . ."  *Id.* (citations and quotation marks omitted); *see also Ex parte Phenix City Bd. of Educ.*, 109 So. 3d 631, 632 (Ala. 2012) (holding that state agencies "have absolute immunity from *suit*, not simply immunity from certain *claims*." (citation and quotation marks omitted)).

The foregoing authority leads to the clear conclusion that RCBOE has absolute immunity for state law claims.  Plaintiffs' arguments in rebuttal are not responsive to and do not address absolute immunity.  (*See* Doc. # 73, at 6–12.)  Accordingly, RCBOE's motion to dismiss Counts IV, VII, and VIII is due to be granted.

### 2.    *Title VI Hostile Educational Environment Claim (Count V)*

The RCBOE contends that Count V is subject to dismissal because "[n]either the Supreme Court [n]or the Eleventh Circuit ha[s] allowed a plaintiff to assert a Title VI hostile educational environment claim for student-on-student harassment."

(Doc. # 68, at 5–6.)  Alternatively, the RCBOE contends that, "if such a cause of action exists," Plaintiffs have failed to allege plausibly that it "was 'deliberately indifferent' to the harassment."  (Doc. # 68, at 6–7.)  For its alternative argument, the RCBOE relies principally on *Stinson ex rel. K.R. v. Montgomery County Board of Education*, 365 F. Supp. 3d 1233 (M.D. Ala. 2019).  (Doc. # 68, at 7–8.)

These arguments need not detain the court long.  First, to clarify the RCBOE's argument, the RCBOE does not cite a binding decision that affirmatively holds that Title VI precludes a claim premised on a racially hostile environment arising from student-on-student harassment.  That issue, as the RCBOE concedes, has not been decided yet in this circuit.[1]  The RCBOE asks for a ruling in its favor based on the absence of authority in this circuit. The court declines to decide an issue of first impression on such a threadbare argument.

Second, Defendants rely on *Stinson*, a Title IX case, presumably because "Title IX was patterned after Title VI of the Civil Rights Act of 1964."  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979).  However, their reliance on the district court's opinion in *Stinson* no longer has force because the Eleventh Circuit since has reversed and remanded the judgment.  *See Stinson ex rel. K.R. v. Maye*, 824 F. App'x

---

[1] As the RCBOE acknowledges, other circuits have decided this issue.  For example, the Fifth Circuit has recognized this type of Title VI claim.  *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (permitting "a Title VI claim premised on a racially hostile environment arising from student-on-student harassment" and holding that the "correct analytical framework for a Title VI student-on-student harassment claim is the deliberate indifference standard").

849, 858–59 (11th Cir. 2020) (holding that the complaint plausibly alleged that the county board of education was deliberately indifferent to student-on-student sexual harassment and discrimination under Title IX).

In sum, the RCBOE's arguments encompass insufficient authority and analysis to warrant Count VI's dismissal at this stage of the proceedings.

### 3.   *Fourteenth Amendment Substantive Due Process Claim (Count VI)*

The RCBOE argues that Plaintiffs' Fourteenth Amendment substantive due process claim fails as a matter of law because Plaintiffs have not alleged that it "engaged in any conduct that shocks the conscience." (Doc. # 68, at 10.) Plaintiffs argue, and allege, that the RCBOE engaged in conscience-shocking conduct by failing to prevent known bullying by Defendants B.P. and D.S. against Plaintiff F.V. (Doc. # 73, at 26.) The allegations do not rise to the level of conscience shocking.

"[T]o prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation." *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997). A government entity can be held liable under § 1983 only if its "'policy' was responsible for its employee's violation of the plaintiff's constitutional rights." *Id.* If there is no underlying constitutional violation by the employee, there is no basis to hold the government entity liable for its policy. *See id.* at 569 ("[A] government entity's custom or policy is relevant only when a

constitutional deprivation has occurred." (citation and quotation marks omitted)).  It is appropriate then to initially address whether the RCBOE's principal or teacher violated F.V.'s substantive due process rights before examining any policy.[2]

"As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.'"  *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002).  "This standard is narrowly interpreted and applied."  *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) (citation and quotation marks omitted).  And the standard is exacting to prevent "the Fourteenth Amendment from becoming a surrogate for conventional tort principles."  *Nix*, 311 F.3d at 1376.  Where no custodial relationship exists, as in the school setting, "courts have not allowed [substantive] due-process liability for deliberate indifference" and have "allow[ed] recovery for intentional conduct under limited circumstances."[3]  *Nix*, 311 F.3d at 1378 (alterations added); *Hernandez*, 982 F.3d at 1331 ("No case in the Supreme Court, or in this Circuit, . . . has held that . . . deliberate indifference is a sufficient

---

[2] Plaintiffs' Third Amended Complaint fails to allege any policy or custom that caused F.V.'s injuries, which is another fundamental flaw in the pleading.  (Doc. # 65, ¶¶ 53–59.)  It is not necessary to decide the motion on this basis because there are no allegations that plausibly show an underlying substantive due process violation.

[3] "It is well-established that 'schoolchildren are not in a custodial relationship with the state.'"  *Hernandez*, 982 F.3d at 1329 (quoting *Nix*, 311 F.3d at 1378).  This is odd, considering state compulsory education laws, but it nevertheless is currently the law of this circuit.

level of culpability to state a claim of violation of substantive due process rights in a non-custodial context.").

The Eleventh Circuit has recognized a "shock the conscience" basis of liability only for "intentional, obviously excessive corporal punishment" and only in two published decisions. *Hernandez*, 982 F.3d at 1331 (citing *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000), and *Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003)).  In *Neal*, "the coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student," 229 F.3d at 1071, and in *Kirkland*, a high school principal "struck the student with a metal cane in the head, ribs, and back for disciplinary reasons," 347 F.3d at 904–05.  *See Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009).

Both *Neal* and *Kirkland* involved direct, intentional physical abuse by a state actor.  Here, Plaintiffs allege that Thomas created the danger that led to B.P.'s and D.S.'s attack on F.V. in August 2018 because he was on his phone and was not paying attention to the students on the playground.  Plaintiffs also allege that Thomas and Fryer permitted the three students to be in "close proximity" without supervision, even though they knew about the past bullying and the playground attack.  (Doc. # 65, at ¶¶ 12, 65, 56–59, 65.)  Plaintiffs do not allege that Thomas or Fryer engaged in intentional acts of physical abuse against F.V.  Rather, the

11

perpetrators of the physical abuse were F.V.'s classmates.  Hence, Thomas and Fryer's alleged  actions are distinguishable from the sort of intentional and excessive corporal punishments inflicted by the school officials in *Neal* and *Kirkland*.

Plaintiffs have cited no authority that warrants an extension of the shocks-the-conscience standard to the facts of this case involving a third party's violence against a classmate that was not directed or sanctioned by a school official.  Plaintiffs argue that "this case is a prime example of" deliberate indifference that rises to the level of conscious shocking, but they point to no decision with even remotely analogous facts.  (*See* Doc. # 73, at 26.)  The allegations that Thomas and Fryer failed to prevent the bullying, attack, and death threat Plaintiff F.V. suffered, even if that failure is unacceptable, does not shock the conscience in a constitutional sense under the rigorous Eleventh Circuit standard.  The allegations demonstrate at best deliberate difference, not conduct "intended to injure in some way unjustifiable by any government interest." *Davis*, 555 F.3d at 982.

Because Plaintiffs have failed to allege a plausible substantive due process violation by either the principal or the teacher, Plaintiffs' claim against the RCBOE necessarily fails.  Accordingly, the RCBOE's motion to dismiss Count VI is due to be granted.

**B.**    **Defendants Jeremiah Thomas and Jimmie Fryer's Motion to Dismiss**

Defendants Thomas and Fryer (collectively, "individual Defendants") also urge dismissal of each count against them. The arguments are addressed in turn.

**1.**    ***State Law Claims (Counts IV, VII, and VIII):  Article I, Section 14 Immunity Under the Alabama Constitution***

The individual Defendants argue that in their official capacities, they are entitled to sovereign immunity under Article I, Section 14 of the Alabama Constitution on the state law claims in Counts IV, VII, and VIII.  (Doc. # 67, at 7–8.)  Plaintiffs refute that they bring official capacity claims in the Third Amended Complaint.  They contend that they have sued Thomas and Fryer only in their individual capacities for monetary damages based on their roles as state agents.  (Doc. # 72, at 14, 25.)  The individual Defendants reply that any individual capacity claims are "in actuality" official capacity claims because Defendants' actions encompass only "alleged acts or omissions performed in furtherance of Defendants' duties as employees of the RCBOE."  (Doc. # 77, at 6.)  Hence, they argue that based on the nature of the claims, they still are entitled to sovereign immunity.  (Doc. # 77, at 4–7.)  The individual Defendants have the correct argument.

The Alabama Supreme Court "has noted the general rule that the State immunity provided by § 14 'cannot be circumvented by suing the [State] official or agent individually . . . .'"  *Barnhart v. Ingalls*, 275 So. 3d 1112, 1125 (Ala. 2018)

(quoting *Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978)) (alteration in original). This general rule, however, is not without exceptions:  State absolute immunity does not apply to "'actions for damages brought against State officials in their individual capacity where it is alleged that they acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, *subject to the limitation that the action not be, in effect, one against the State*.'"  *Id.* (quoting *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013)) (emphasis added).  To determine "whether an action against a state officer or employee is, in fact, one against the State, a court will consider such factors as the nature of the action and the relief sought."  *Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004) (cleaned up).

*Barnhart* is helpful for resolving the state sovereign immunity issue in this case.  In *Barnhart*, the plaintiffs—former employees of the Space Science Exhibit Commission—brought a putative class action against the Commission's officers alleging "negligence/wantonness and breach-of-fiduciary-duty claims against the Commission officers in their individual capacities."  275 So. 3d at 1118.  On the negligence claim, the plaintiffs alleged that "the Commission officers 'owed a duty to Commission employees to compensate them in accordance with Alabama law . . . .'"  *Id.* at 1126 (alterations adopted).  As for their breach-of-fiduciary-duty claim, the plaintiffs alleged that "the Commission officers 'owed a fiduciary duty to Commission employees to act at all times with utmost care, honesty, loyalty, and

14

fidelity in all of the Commission's actions.'" *Id.* (alterations adopted).  The officers argued "that they [were] entitled to State immunity with regard to the individual-capacities claims, which" sought money damages from them personally.  *Id.* at 1125.

The Alabama Supreme Court noted that at first glance it did not appear that State absolute immunity barred the plaintiffs' claims because they were "seeking personal payment from the Commission officers for tortious misconduct alleged in the individual-capacities claims—and that such a judgment would therefore have no effect on the State treasury . . . ." *Id.* at 1126.  It recognized its prior cases that had focused only on the source of a damages award in determining whether a claim was, "in effect, one against the State." *Id.*  In *Barnhart*, the court held that "regardless of the <u>damages</u> being sought, the <u>nature</u> of those claims requires [it] to hold otherwise." *Id.* (emphasis in original).  "[T]he individual-capacities claims [were], in effect, claims against the State that [were] barred by § 14." *Id.* (alterations added).

The court reasoned that a "necessary element" of the negligence claim and the breach-of-fiduciary-duty claim was "whether, in their individual capacities, the Commission officers owed a duty to the [plaintiffs]." *Id.* (alteration added).  And given how the plaintiffs had alleged those claims, the court determined that "the duties allegedly breached by the Commission officers were owed to the [plaintiffs] only because of the positions the Commission officers held and that the Commission

officers were, accordingly, acting only in their official capacities when they allegedly breached those duties . . . ." *Id.* (emphasis in original) (alteration added).

*Barnhart* requires the same outcome in this case. Plaintiffs seek monetary damages for F.V.'s injuries, not equitable relief. A request for monetary relief can signal an individual capacity suit to which state sovereign immunity does not apply. But as *Barnhart* establishes, that is not always the case under Alabama law. The nature of the action can establish to the contrary, which it does here.

The state law claims Plaintiffs bring against the individual Defendants include claims for negligence *per se*, wantonness *per se*, and a breach of a duty to supervise.[4] Each of these claims incorporates an element of duty and, thus, raises the issue of whether the individual Defendants owed a duty to F.V. in their personal capacities.[5] *See, e.g., Allen Trucking Co. v. Blakely Peanut Co.*, 340 So. 2d 452, 454 (Ala. Civ. App. 1976) (observing that for a negligence *per se* claim, "if the statute created no duty to plaintiff, a violation thereof could not be negligence per se").

For each claim, Plaintiffs allege that two Alabama statutes establish the duty. In Count IV, Plaintiffs allege that Thomas and Fryer "owed a duty to Plaintiff F.V.

---

[4] Because Ms. Vargas's loss-of-services claim in Count VIII is "derivative of, and dependent upon the outcome of," Counts IV and VII, separate analysis of Count VIII is not necessary. *Ex parte Progress Rail Servs. Corp.*, 869 So. 2d 459, 462 (Ala. 2003). Count VIII has the same destiny as Counts IV and VII.

[5] The origin under Alabama law for Plaintiffs' independent claim for "breach of duty to supervise" against the individual Defendants is unclear (Doc. # 65, at 18), but, the claim, by its own terms, has as an element a duty owed.

under" the Safe at Schools Act, Ala. Code § 16-30A-1, *et seq.*, and under the Jamari

Terrell Williams Student Bullying Prevention Act, *see* Ala. Code § 16-28B-1, "to

implement policies and procedures to prevent bullying."[6]   (Doc. # 65, ¶ 37.)

Plaintiffs further allege that Thomas and Fryer breached the duty they owed F.V. by

failing "to implement policies and procedures to prevent bullying, even after

bullying on their premises and/or under their supervision resulted in life-threatening

physical injuries" to F.V.  (Doc. # 65, at ¶ 40.)  In Count VII, Plaintiffs allege that

Thomas and Fryer had "a duty to supervise the students so as to prevent bullying"

and that "the duty to prevent bullying is closely . . . regulated" by the Safe at Schools

Act and by the Jamari Terrell Williams Student Bullying Prevention Act.  (Doc.

# 65, ¶ 64; *see also* Doc. # 72, at 18 ("Plaintiffs have cited several statutes in this

case because they are relevant to the recognition by the Legislature of a

governmental duty to protect students from bullying and similar hazards in the

educational setting.").)

    As pleaded, Thomas's and Fryer's duties stem from two state statutes

imposing duties on Alabama's public schools.  Thomas and Fryer had no duties

outside of their employment to comply with the Safe at Schools Act or with the

---

[6] The Third Amended Complaint refers to both the Student Harassment Protection Act and the Jamari Terrell Williams Student Bullying Prevention Act.  The Student Harassment Protection Act was renamed the Jamari Terrell Williams Student Bullying Prevention Act in 2018.  *See* Ala. Code § 16-28B-1 (2018 Amendment Notes).

Jamari Terrell Williams Student Bullying Prevention Act; "rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State." *Barnhart*, 275 So. 3d at 1127.  In other words, the statutory duties allegedly breached were owed to Plaintiff F.V. only because of the positions Thomas and Fryer held as principal and teacher.  They were accordingly "acting only in their official capacities when they allegedly breached those duties" *Id.* at 1126.

All the Alabama decisions upon which Plaintiffs rely predate the *Barnhart* decision.  (Doc. # 72, at 6–16.)  Plaintiffs have not mentioned or offered any argument for distinguishing *Barnhart*.

Accordingly, for the same reasons discussed in Part IV.A.1., Fryer and Thomas are entitled to immunity under Article I, Section 14 of the Alabama Constitution, on the state law claims in Counts IV, VII, and VIII.  Counts IV, VII, and VIII against the individual Defendants are due to be dismissed.

### 3.   *Title VI Hostile Educational Environment Claim (Count V)*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Title VI "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts

essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).

The individual Defendants argue that only the grant recipients of federal funding can be held liable under Title VI and that individuals working for a school system are not the grant recipients.  (Doc. # 67, at 12.)  They contend that as a matter of law the Title VI claim must be dismissed against them.

Binding precedent is on their side.  The Eleventh Circuit has held that "[i]t is beyond question . . . that individuals are not liable under Title VI."  *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003).  To "license individual liability for violations of Title VI," the *Shotz* court explained, would exceed the "allowed scope of government enforcement action under the statute."  *Id.* at 1170.  Also, "[b]y limiting coverage to recipients, Congress imposes the obligations of [Title VI] upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds."  *Id.*

Plaintiffs' unsupported argument suggesting that the Title VI claim should proceed against Fryer and Thomas because they acted as agents for the school cannot overcome the clear command of *Shotz*.  (Doc. # 72, at 23.)  Accordingly, the individual Defendants' motion to dismiss the Title VI claim is due to be granted.

**3.**   ***Fourteenth Amendment Substantive Due Process Claim (Count VI)***

Thomas and Fryer, like the RCBOE, move to dismiss the substantive due process claim on grounds that the alleged conduct is not conscience shocking.  For the reasons articulated in Part IV.A.3, they are correct.  Because Plaintiffs have not alleged a cognizable substantive due process violation against Thomas and Fryer, their motion to dismiss Count VI is due to be granted.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that the Randolph County Board of Education's motion to dismiss (Doc. # 68) is GRANTED in part and DENIED in part as follows:

(1)   The motion to dismiss the state law claims in Counts IV, VII, and VIII and the Fourteenth Amendment substantive due process in Count VI is GRANTED; and

(2)   The motion to dismiss the Title VI claim in Count V is DENIED.

It is further ORDERED that Defendants Jeremiah Marquis Thomas and Jimmie Fryer's motion to dismiss (Doc. # 67) is GRANTED.  The Clerk of the Court is DIRECTED to terminate Thomas and Fryer as defendants in this action.

DONE this 31st day of March, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE